IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRAD LIEBERMAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 13 C 8599 |
| | ) |
| GREGORY SCOTT, Program Director, | ) |
| Rushville Treatment and Detention | ) |
| Facility, Illinois Department of Human | ) |
| Services, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Brad Lieberman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Lieberman's habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2). Further, the Court denies Lieberman's motion for a mental examination [10], motion for an evidentiary hearing [31], and motion to show cause [24].

## BACKGROUND

Lieberman does not present clear and convincing evidence challenging the statement of facts in the last state court decision addressing his arguments on the merits, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Ford v. Wilson,* 747 F.3d 944, 947 (7th Cir. 2014). The Court therefore adopts the underlying facts as set forth by the Supreme Court of Illinois in *In re Detention of Stanbridge,* 980 N.E.2d 598, 366 Ill.Dec. 505 (Ill. 2012).

I.    **Introduction**

Lieberman is civilly committed to the custody of Respondent Gregory Scott, Program Director of the Rushville Treatment and Detention Center, in Rushville, Illinois. On February 6, 2006, a jury in the Circuit Court of Cook County found that Lieberman was a sexually violent person ("SVP") pursuant to Illinois' Violent Persons Commitment Act ("SVPCA"), 725 ILCS 207/1, *et seq.* Thereafter, a Circuit Court judge ordered Lieberman committed to the Illinois Department of Human Services ("DHS"). In July 2008, Lieberman petitioned for discharge or conditional release pursuant to 725 ILCS 207/60. The present habeas petition challenges the denial of the 2008 discharge/conditional release petition.

II.    **Initial Commitment Proceedings**

At Lieberman's initial commitment trial, the State established that he had been convicted of seven counts of rape and two counts of attempted rape. The State also presented expert witness testimony that Lieberman suffered from paraphilia, which is characterized by recurrent, intense, sexually arousing fantasies, urges, or behaviors involving nonconsenting persons. *See In re Detention of Lieberman*, 379 Ill.App.3d 585, 586, 884 N.E.2d 160, 318 Ill.Dec. 605 (1st Dist. 2007). Because the Diagnostic and Statistical Manual of Mental Disorders-IV ("DSM-IV") does not specifically list paraphilia involving nonconsenting persons, but includes a residual category for paraphilia "not otherwise specified," the expert witnesses used the shorthand "paraphilia NOS, nonconsent" to describe Lieberman's mental disorder. *In re Detention of Lieberman*, 379 Ill.App.3d at 588, 592. One of the State's expert witnesses further "opined that it is substantially probable that [Lieberman] will continue to commit acts of sexual violence if released into the community." *Id.* at 589. The other expert testified that "based upon his clinical judgment and

review of the actuarial result and risk factors, there is a high risk that [Lieberman] will sexually reoffend." *Id.* at 593. The jury found that Lieberman was a sexually violent person in February 2006 and Lieberman appealed.

The Illinois Appellate Court affirmed and the Supreme Court of Illinois denied Lieberman's petition for leave to appeal ("PLA"). Thereafter, the United States Supreme Court denied his petition for a writ of certiorari on April 27, 2009. Lieberman then filed his first habeas petition pursuant to 28 U.S.C. § 2254(d) on April 26, 2010. On December 8, 2011, the Court denied Lieberman's habeas petition and declined to certify any issues for appeal under 28 U.S.C. § 2253(c)(2). Lieberman did not file a petition for a certificate of appealability to the United States Court of Appeals for the Seventh Circuit. The Court presumes familiarity with its December 8, 2011, Memorandum, Opinion, and Order.

### III. Proceedings on Petition for Discharge

In October 2007, DHS conducted an annual re-examination as required under 725 ILCS 207/55(a) to determine whether Lieberman had made sufficient progress to be conditionally released or discharged. The DHS evaluator, David Suire, a licensed clinical psychologist, reported that Lieberman refused to participate in the clinical interview for purposes of his annual reexamination. In his October 19, 2007 report, Dr. Suire stated that, to a reasonable degree of psychological certainty, Lieberman met the diagnostic criteria under the DSM for the following diagnoses: (1) paraphilia NOS, nonconsenting females; (2) cannabis abuse; (3) antisocial personality disorder; and (4) narcissistic personality disorder. Dr. Suire then concluded that — in his professional opinion and to a reasonable degree of psychological certainty — it was substantially probable that Lieberman would engage in acts of sexual violence in the future and

3

recommended that the court find Lieberman to be a SVP and remain committed to the DHS treatment and detention facility.

On July 15, 2008, Lieberman filed a petition for release from custody and later filed a petition for conditional release. The Circuit Court then appointed Dr. Eric Ostrov to conduct an independent examination of Lieberman and granted Lieberman's request for an examination by Dr. Chester Schmidt. Both experts prepared reports that were submitted to the court. On September 17, 2008, the Circuit Court held a probable cause hearing to determine whether facts existed to warrant a hearing on whether Lieberman remains a SVP at which Dr. Schmidt, Dr. Ostrov, Dr. Suire, and Lieberman testified.

Lieberman's expert Dr. Schmidt testified that "paraphilia NOS, nonconsent" is not included in the DSM-IV, but admitted that the diagnosis of paraphilia NOS, nonconsent is widely used and that an ongoing debate exists in the medical community regarding this diagnosis. Dr. Schmidt also testified that Lieberman's behavior while incarcerated and civilly committed indicated that he did not suffer from paraphilia explaining that only a small fraction of rapists suffer from paraphilia. Further, Dr. Schmidt believe that Lieberman's sexual experiences as a teenager resulted in Lieberman's belief that "when women say no they really meant yes." Also, Dr. Schmidt noted that during the time period when Lieberman committed the rapes, he was acting selfishly and had no regard for the law.

Dr. Ostrov, the court-appointed expert, also testified at the September 2008 probable cause hearing stating that, within a reasonable degree of psychological certainty, Lieberman's diagnoses was paraphilia involving nonconsenting persons and a personality disorder with antisocial and narcissistic features. He testified that these disorders predispose Lieberman to

4

committing future acts of sexual violence. Further, Dr. Ostrov testified that the DSM contains guidance for a diagnosis of paraphilia NOS, nonconsent, stating that the person must have "recurrent and intense" sexually arousing fantasies, sexual urges, or behaviors. He also explained that the DSM gives examples of the objects of these fantasies, urges or behaviors, including "children or other nonconsenting persons."

In addition, Dr. Ostrov explained several aspects of Lieberman's behavior that informed his diagnosis, including that Lieberman committed the numerous rapes despite fear of apprehension and that he continued to commit rapes even after he was arrested and released on bond. Dr. Ostrov also rejected Lieberman's position that he committed the rapes because he was young and stupid. Specifically, he testified that this conduct was not "youthful caprice" but "driven behavior." In addition, Dr. Ostrov stated that Lieberman had not participated in sex-offender treatment while in custody.

DHS expert Dr. Suire also testified at the hearing diagnosing Lieberman with "paraphilia not otherwise specified, sexually attracted to nonconsenting person nonexclusive," cannabis abuse, antisocial personality disorder, and narcissistic personality disorder. He testified that he was aware of the disagreement in the medical community regarding the diagnosis of paraphilia NOS, nonconsent, but that this disagreement did not prevent him from diagnosing Lieberman with the disorder because "there is probably nothing in the field of psychology that doesn't have some degree of disagreement." He then explained that not all rapes are due to paraphilic urges, and thus it is important to determine if the driving force behind the rape-type behavior is an underlying specific urge toward nonconsenting sexual contact. In making this determination, Dr. Suire considered the use of a kind of "stereotype repetitious pattern," whether the rape-type

5

behaviors were occurring while the person had access to consenting sexual partners, the frequency of the acts of sexual misconduct, and whether Lieberman was committing other crimes while committing the rapes. Dr. Suire also noted that Lieberman had never participated in core sexual offender treatment that can "substantially reduce the risk of sexually reoffending."

Lieberman testified at the hearing that since his civil commitment, he has married, taken computer classes, obtained an Occupational Safety and Health Administration ("OSHA") certification, and participated in an institutional newsletter. He also testified that he has refused to participate in the facility's formal sexual offender treatment program because it requires that he admit that he lacks volitional control. Also, he testified that he has not participated in formal treatment because he does not want to listen to fellow detainees describe the crimes they have committed. Lieberman, however, also testified that until fairly recently, he had denied committing the 1980 rapes.

The Circuit Court denied Lieberman's petition and concluded that there was no probable cause to warrant a hearing on the issues of whether Lieberman remained a SVP or whether it was not substantially probable that Lieberman would engage in acts of sexual violence if released. Lieberman appealed to the Illinois Appellate Court arguing that his continued civil commitment violated the United States Constitution because: (1) the mental disorder of paraphilia involving nonconsenting persons does not exist; (2) even if the diagnosis of paraphilia involving nonconsenting persons did exist, his disorder is not severe enough to warrant civil commitment; and (3) his civil commitment is based on his past criminal conduct alone. The Illinois Appellate Court affirmed, *see In re Detention of Lieberman*, 401 Ill.App.3d. 903, 929 N.E.2d 616 (1st Dist. 2010), but the Supreme Court of Illinois directed the Illinois Appellate Court to reconsider its

judgment in light of the decision in *In re Detention of Hardin,* 238 Ill.2d 33, 342 Ill.Dec. 555, 932 N.E.2d 1016 (2010). On remand, the Illinois Appellate Court affirmed the Circuit Court's judgment. *See In re Detention of Lieberman*, 955 N.E.2d 118, 352 Ill.Dec. 942 (1st Dist. 2011). The Supreme Court of Illinois granted Lieberman's PLA, consolidated Lieberman's appeal with another case, and unanimously affirmed the Illinois Appellate Court's judgment. *In re Detention of Stanbridge,* 980 N.E.2d 598, 366 Ill.Dec. 505 (Ill. 2012).

## IV.     Habeas Petition

On November 27, 2013, Lieberman filed the present habeas petition. Construing Lieberman's pro se allegations liberally, *see Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013), he brings the following claims: (1) paraphilia involving nonconsenting persons is not a scientifically supported diagnosis of a mental disorder; (2) his civil commitment is based solely on his decades-old past criminal conduct; (3) the State's evidence did not demonstrate that as a result of his diagnosed mental disorder that it is substantially probable that he will reoffend; and (4) there is no state procedure for collateral attack of an SVP judgment. In addition, Lieberman has filed a motion for a mental health examination arguing that an examination would show that he should be released immediately. He also filed a motion to show cause and for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).

## ANALYSIS

## I.     Substantive Due Process Claim — Mental Disorder

Lieberman's first habeas claim is that paraphilia NOS involving nonconsenting persons is not a scientifically supported diagnosis of a mental disorder. Construing this pro se claim liberally, Lieberman argues that his constitutional right to substantive due process was violated

7

because he does not have a mental disorder in the first instance. Indeed, due process limits civil commitment to a period during which a committed person is both mentally ill and dangerous. *See Foucha v. Louisiana*, 504 U.S. 71, 77, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992); *Martin v. Bartow,* 628 F.3d 871, 874 (7th Cir. 2010). In other words, "dangerousness without proof of some underlying mental condition is not sufficient to sustain an involuntary commitment." *McGee v. Bartow*, 593 F.3d 556, 576 (7th Cir. 2010). The Supreme Court acknowledges that "States retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment." *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002); *see also Kansas v. Hendricks,* 521 U.S. 346, 359, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) ("[W]e have never required state legislatures to adopt any particular nomenclature in drafting civil commitment statutes. Rather, we have traditionally left to legislators the task of defining terms of a medical nature that have legal significance."). In Illinois, under the SVPCA, a mental disorder "means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." 725 ILCS 207/5.

In addressing Lieberman's due process argument, the Supreme Court of Illinois focused on Lieberman's double jeopardy and ex post facto arguments discussed below. Because no state court squarely addressed this due process issue, the Court reviews this claim under the standard pursuant to 28 U.S.C. § 2243, allowing the Court to "dispose of the matter as law and justice require." *Ruhl v. Hardy,* 743 F.3d 1083, 1091 (7th Cir. 2014) ("If no state court has squarely addressed the merits of a habeas claim, we review the claim de novo under the pre-AEDPA standard of 28 U.S.C. § 2243, but still with deference to the state court.").

8

As to the diagnosis of paraphilia NOS, nonconsent, the Seventh Circuit teaches that although there are conflicting professional views, "the diagnosis of a paraphilic disorder related to rape is not so unsupported by science that it should be excluded absolutely from consideration by the trier of fact." *McGee,* 593 F.3d at 580. The Seventh Circuit reached this conclusion "primarily because of the Supreme Court's repeated statements that states must have appropriate room to make practical, common-sense judgments about the evidence presented in commitment proceedings." *Id.* Indeed, many jurisdictions that provide for civil commitment have identified paraphilic NOS, nonconsent, as a predicate diagnosis. *See id.* n.16 (listing jurisdictions); *see also In re Detention of Melcher,* 2 N.E.3d 1181, 1194, 377 Ill.Dec. 900, 913 (1st Dist. 2013) ("There is ample evidence to conclude that [paraphilia] NOS nonconsent is generally accepted within the psychological community.") As the Seventh Circuit in *McGee* reasoned:

> The professional objections to the diagnosis of paraphilia NOS (nonconsent or rape) are not without persuasive value. The existence of the debate is a relevant issue in commitment proceedings and a proper consideration for the factfinder in weighing the evidence that the defendant has the "mental disorder" required by statute. Given the present state of Supreme Court precedent, however, we cannot conclude that the diagnosis of a rape-related paraphilia is so empty of scientific pedigree or so near-universal in its rejection by the mental health profession that civil commitment cannot be upheld as constitutional when this diagnosis serves as a predicate.

*McGee,* 593 F.3d at 581; *see also Brown v. Watters,* 599 F.3d 602, 612 (7th Cir. 2010) ("We again reject the challenge to the paraphilia NOS nonconsent diagnosis as so lacking in scientific validity that to rely upon it for civil commitment amounts to a denial of due process.").

Because it is well-established in Illinois that paraphilia NOS nonconsent is generally accepted within the psychological community as a mental disorder and is in accordance with *Foucha*, *Hendricks*, and *Crane*, Lieberman's first habeas claim concerning his due process rights is without merit.

9

**II.     Double Jeopardy/Ex Post Facto Claim**

Next, Lieberman argues that his involuntary civil commitment is unconstitutional because it is based on his past criminal conduct. Construing his pro se habeas petition liberally, Lieberman's second claim implicates the double jeopardy clause prohibiting multiple punishments for the same offense and the ex post facto clause prohibiting retroactive punishment. In addressing Lieberman's arguments, the Supreme Court of Illinois reasoned:

> The ex post facto clause, under article I, section 10, of the United States Constitution, prohibits the states from passing any law that retroactively alters the definition of a crime or increases the punishment for a criminal act. *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Only penal statutes may implicate federal ex post facto protection. *Kansas v. Hendricks,* 521 U.S. 346, 370, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). "An Act, found to be civil, cannot be deemed punitive 'as applied' to a single individual in violation of the ... Ex Post Facto Clause [ ] and provide cause for release." *Seling v. Young,* 531 U.S. 250, 267, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001). Thus, the constitutional principles prohibiting ex post facto laws apply only to criminal proceedings. *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072.
>
> Furthermore, due process permits an individual to be held as long as he or she is both mentally ill and dangerous, but no longer. *Foucha v. Louisiana*, 504 U.S. 71, 77, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). The State's expert[']s opinion was that Lieberman continues to have a mental disorder and that he continues to be dangerous. To the extent that the experts relied on prior criminal conduct to make that determination, the experts['] opinions when viewed in context used "such conduct ... solely for evidentiary purposes, either to demonstrate that a 'mental abnormality' exists or to support a finding of future dangerousness." *Hendricks,* 521 U.S. at 362, 117 S.Ct. 2072. The evidence presented did not seek to "affix culpability for prior criminal conduct." *Id*. Rather, it used the prior acts "solely for evidentiary purposes" to support a finding of Lieberman's mental disorder and future dangerousness. *Id*. at 371, 117 S.Ct. 2072. As Dr. Suire testified, he considered not merely the convictions, but the pattern of behaviors, the frequency, and other related considerations to determine if the driving force behind the rape-type behavior was a specific urge toward nonconsenting sexual contact. As *Hendricks* explained, evidence of a prior criminal act in a civil commitment proceeding may represent an "'important indicator of future violent tendencies.'" *Id.* at 358, 117 S.Ct. 2072 (quoting *Heller v. Doe,* 509 U.S. 312, 323, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Both experts explained that Lieberman's past behaviors were important predictors of

> future sexual violence. Accordingly, we find no merit to Lieberman's
> constitutional contentions.

*In re Detention of Stanbridge,* 980 N.E.2d at 619-20.

The Court's review of the Supreme Court of Illinois' decision is limited by the highly deferential standard of review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. *See Ruhl,* 743 F.3d at 1092. Despite Lieberman's arguments to the contrary, the Court does not independently review the evidence and arguments made at his probable cause hearing or on appeal nor does the Court consider evidence outside of the state court record. *See Quintana v. Chandler,* 723 F.3d 849, 852 (7th Cir. 2013). Instead, the issue before the Court is whether the Supreme Court of Illinois' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the Seventh Circuit recently explained, "[a]n unreasonable application of federal law is different from a merely incorrect application of law," because "§ 2254(d)(1) gives state courts considerable latitude in applying federal law as determined by the Supreme Court." *Lee v. Foster*, 750 F.3d 687, 696 (7th Cir. 2014); *see also Williams v. Taylor,* 529 U.S. 362, 410, 20 S.Ct. 1495, 146 L.Ed2d 389 (2000) ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original).

Here, the Supreme Court of Illinois' decision was not an unreasonable application of the clearly-established Supreme Court precedent embodied in *Hendricks*. In *Hendricks*, the Supreme Court rejected an ex post facto challenge to a state statute similar to the SVPCA, reasoning that it was not punitive and did not have retroactive effect. *Id.* at 370-71. Further, the *Hendricks* Court recognized that "[p]revious instances of violent behavior are an important

11

indicator of future violent tendencies." *Id.* at 358 (quotation omitted). Finally, Lieberman's civil commitment does not violate the double jeopardy clause because the SVPCA is civil in nature, and thus does not constitute a second prosecution nor is his civil commitment tantamount to punishment. *See id.* at 369; *see also Allen v. Illinois,* 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986) (Proceedings pursuant to Illinois' Sexually Dangerous Persons Act are civil in nature). Because the Supreme Court of Illinois' decision was not an unreasonable application of *Hendricks*, Lieberman's second habeas claim fails.

### III. Substantive Due Process Claim — Severity of Mental Disorder

In his habeas petition, Lieberman next argues that the State's evidence did not demonstrate that as a result of his diagnosed mental disorder it is substantially probable that he will reoffend. Construing his pro se petition liberally and in accordance with the claim he made on appeal to the Illinois courts, Lieberman argues that his due process rights were violated because any mental disorder he might have is not severe enough to warrant civil commitment. (R. 22-1, Resp. Brief, at 24.) In other words, Lieberman argues that his civil commitment violates his due process rights set forth in *Crane* and *Hendricks* because he does not suffer from a mental disorder that causes him difficulty in controlling his sexual behavior, thus creating a substantial probability that he will engage in sexual violent if he is discharged or conditionally released. *See Crane,* 534 U.S. at 413; *Hendricks,* 521 U.S. at 358.

The factual basis Lieberman now sets forth for this habeas claim varies from his arguments on appeal to the Illinois state courts. In particular, in state court, Lieberman argued that Dr. Schmidt's testimony, as well as other evidence in the record such as his primary DHS therapist's deposition testimony and Dr. Ostrov's testimony, supported the conclusion that his

12

condition had improved and that his mental illness was no longer severe. (Resp. Brief, at 22-23.) In his habeas petition, Lieberman argues that Dr. Suire and Dr. Ostrov improperly applied the wrong actuarial risks assessment when they concluded that Lieberman was likely to reoffend. As such, Lieberman did not fairly present the present federal issue to the state courts, and thus this claim is procedurally defaulted. *See Weddington v. Zatecky,* 721 F.3d 456, 465 (7th Cir. 2013) ("A petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'") (citation omitted). Put differently, Lieberman has procedurally defaulted this claim because he did not present the operative facts and controlling law to the state courts before bringing this claim on collateral review. *See McDowell v. Lemke,* 737 F.3d 476, 482 (7th Cir. 2013); *see, e.g., Lieberman v. Thomas,* 505 F.3d 665, 670-71 (7th Cir. 2007).

Even if Lieberman had fully and fairly presented this claim to the state courts, any such claim would fail. More specifically, Lieberman argues that Drs. Suire and Ostrov used the wrong actuarial risk assessment that gives estimates of the probability of sexual and violent recidivism, namely, the STATIC-99, instead of the updated STATIC-99R. The updated STATIC-99R takes age into consideration when assessing sexual recidivism. *See In re Detention of Cain*, No. 5-13-0090, 2014 WL 316562, at *6 (5th Dist. 2014) (Static 99 and Static 99R "are identical in all but one aspect: the Static 99R accounts for the age of the offender and offers a three-point score reduction for offenders age 60 and older."); *In re Commitment of Dodge,* 989 N.E.2d 1159, 1166, 371 Ill.Dec. 231, 238 (1st Dist. 2013) ("The two tests considered essentially the same factors but the latter test also considered age."); *In re Commitment of Fields,* 981 N.E.2d 384, 391, 367 Ill.Dec. 59, 66 (1st Dist. 2012) ("The Static 99R was a revised version

13

of this instrument and included an adjustment of the age-related (and first) factor.").

Despite the use of the STATIC-99 instead of the STATIC-99R, both Dr. Ostrov and Dr. Suire discussed Lieberman's age at the probable cause hearing. As the Supreme Court of Illinois explained, "Dr. Ostrov believed that other dynamic factors such as age would have some impact on Lieberman's likelihood of recidivism, but not a very significant impact" and "Dr. Suire did not consider Lieberman's age to be a significant protective factor." *In re Detention of Stanbridge,* 980 N.E.2d at 609-10. In the context of their other probable cause hearing testimony that it was substantially probable that it was likely that Lieberman would reoffend and their consideration of Lieberman's age, Dr. Suire's and Dr. Ostrov's use of STATIC-99 does not amount to a due process violation under *Crane* and *Hendricks*, especially because there was sufficient evidence in the record that Lieberman would reoffend in addition to the actuarial risk assessment. *See Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Accordingly, Lieberman's third habeas claim is without merit.

### IV. State Procedure to Collaterally Attack SVP Judgment

Lieberman's last habeas claim is that no Illinois state procedure exists for collateral attack of an SVP judgment. When reviewing a petition for habeas relief, federal district courts are restricted to the question of whether there has been a violation of "the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 2254(a). Because Lieberman is challenging the State of Illinois' procedures regarding SVP judgments, this claim is not cognizable on habeas review because it does not implicate his constitutional rights. In fact, states are not required to provide procedures for a collateral attack of a criminal conviction, let alone civil commitments. *See Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). As such,

Lieberman's last habeas claim fails.

V.     **Pending Motions**

   A.     **Rule 35 Motion for a Mental Examination**

First, Lieberman brings a motion pursuant to Federal Rule of Civil Procedure 35 asking the Court to order him to submit to a mental health examination. Construing his pro se motion liberally, he argues that the procedural safeguards outlined in the SVPCA are pretextual, that the state evaluators work in tandem with Illinois prosecutors, and that he provided qualified expert testimony at the state court probable cause hearing supporting his discharge or conditional release. Lieberman further takes issue with the experts' opinions regarding his diagnosis of paraphilia (NOS), nonconsent because it is not a scientifically supported diagnosis of a mental disorder. Although the Court has already addressed some of the issues Lieberman presents in his Rule 35 motion for a mental examination, the gist of his pro se motion is that Lieberman is dissatisfied with the SVPCA, the State of Illinois' implementation of the SVPCA, and the procedural safeguards afforded civilly committed individuals.

AEDPA requires federal courts to defer to state court adjudications and procedures based on the doctrines of comity and federalism. *See Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 422, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). Thus, for example, "the question of whether the state court properly applied its state procedural rules is a matter of state law, and may not, as a

matter of comity and federalism, be reviewed by a federal court in a habeas case." *Coleman v. O'Leary,* 845 F.2d 696, 700 (7th Cir. 1988).

The Court denies Lieberman's request under Rule 35 because, in essence, he is challenging the SVP and how the Illinois courts implement it. Simply put, the Court does not have jurisdiction to entertain any such argument under AEDPA.

### B. Motion for an Evidentiary Hearing under 28 U.S.C. § 2254(e)(2)

In "reviewing state court decisions entitled to deference under § 2254(d), [federal courts] are confined to evidence before the state court when it rendered its decision." *Quintana*, 723 F.3d at 852. After the Supreme Court's decision in *Cullen v. Pinholster,* ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), district courts can only hold an evidentiary hearing if the court finds that the state court decision failed the test under § 2254(d)(1). *See Stitts v. Wilson,* 713 F.3d 887, 896 (7th Cir. 2013); *Mosley v. Atchison,* 689 F.3d 838, 853 (7th Cir. 2012). Because the Court makes no such finding, the Court denies Lieberman's request for an evidentiary hearing pursuant to § 2254(e)(2).

### C. Motion to Show Cause

Finally, Lieberman filed a motion to show cause based on the October 18, 2013, annual re-examination report created by Dr. Kimberly Weitel. Based on this October 2013 report, the State filed a motion for a finding of no probable cause to warrant an evidentiary hearing pursuant to 725 ILCS 207/65. This motion is unrelated to Lieberman's October 2007 annual re-examination, which is the subject of the present habeas petition. Because the October 2013 re-examination and Dr. Weitel's report are not the subject of the present habeas petition, the Court denies Lieberman's motion to show cause. Again, the Court does not have jurisdiction to

resolve Lieberman's allegations set forth in this motion.

## VI. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Lieberman a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Bolton,* 730 F.3d at 697. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Thomas v. Zatecky,* 712 F.3d 1004, 1006 (7th Cir. 2013); 28 U.S.C. § 2253(c)(2). Under this standard, Lieberman must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, the Court's denial of Lieberman's first three habeas claims is based on well-settled Supreme Court precedent, thus Lieberman has not presented issues that reasonable jurists would debate. Also, jurists of reason would not find it debatable that Lieberman's fourth habeas claim is not cognizable on federal habeas review. Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Lieberman's petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d). Further, the Court denies Lieberman's motion for a hearing [31], motion for a rule to show cause [24], and motion for a mental examination [10].

**Dated:** June 23, 2014

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Judge**